UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE TEAMSTERS LOCAL 631 SECURITY FUND FOR SOUTHERN NEVADA, et al., <br><br>  Plaintiffs <br><br> v. <br><br> BH&L DECORATORS INC., <br><br>  Defendant | Case No.: 2:24-cv-01383-APG-EJY <br><br> **Order Granting Motion for Default Judgment** <br><br> [ECF No. 13] |

Plaintiffs the Board of Trustees of the Teamsters Local 631 Security Fund for Southern Nevada, the Board of Trustees of the Teamsters Convention Industry Training Fund, and the Board of Trustees of the Teamsters Local 631 Convention Vacation Savings Plan (collectively, "Trust Funds") are trust funds and fiduciaries for purposes of the Employee Retirement Income Security Act of 1974 (ERISA).  They sue BH&L Decorators, Inc. because BH&L was required to make employee contributions to the Trust Funds but failed to allow the Trust Funds to conduct an audit to ensure BH&L had made its contributions.

BH&L owed contributions because it employed persons in Nevada who performed work covered by a collective bargaining agreement between BH&L and the Southern Nevada Teamsters Local 631. ECF No. 13-3 (collective bargaining agreement).  BH&L agreed "to be bound by the Trust Agreement, the Plan, the rules, regulations and policies of the Trust Funds, and the actions of the Trustees, all as established, revised, or amended from time to time by the Trustee of the Teamsters Local 631 Trust Funds to which the Employer is obligated to contribute, including the Teamsters Local 631 Security Fund for Southern Nevada, the Teamsters

Local 631 Construction Industry Training Trust, the Teamsters Vacation Trust Fund and the Teamster Local 631 Convention Industry Training Trust." ECF No. 13-2 at 2.

The Agreement and Declaration of Trust for Teamsters Local 631 Security Fund for Southern Nevada has several provisions relating to a contributing employer's responsibilities. As relevant here, employers are obligated to pay monthly contributions to the Trust Funds for covered employees. ECF No. 13-4 at 11, 15. Additionally, the Trust Funds are authorized to audit employers' books and records to ensure the employer is making the required contributions. *Id.* at 18.

If an employer does not comply with an audit request, the Trust Funds may sue to compel an audit and the defaulting employer must pay audit costs, court costs, and reasonable attorney's fees. *Id.* at 18-19. Additionally, the Trust Funds may sue for unpaid contributions, liquidated damages of up to twenty percent of the employer's indebtedness, costs of collection, and actual attorney's fees if the employer is found liable. *Id.* at 16, 19. Further, delinquent employer contributions are "subject to simple interest at the rate of 18% per annum." *Id.* at 43. Under the Trust Funds' collection policy, if an employer refuses to cooperate in an audit such that the Trust Funds cannot determine the amount owed, "then the average annual contributions reported by the employer over the previous three years prior to the Audit review period or $100,000 (whichever is higher) in contributions, plus applicable interest and liquidated damages, shall be deemed due for each calendar year covered by the Audit review period." ECF No. 13-6 at 9.

BH&L did not allow the Trust Funds to inspect its books and records for an audit of the 69 months between January 1, 2018 through September 30, 2023. ECF No. 13-1 at 2-3. The Trust Funds thus initiated this lawsuit, but BH&L defaulted. The Trust Funds now seek a default judgment for delinquent contributions, interest, liquidated damages, audit fees, and past and

future attorney's fees. ECF No. 13 at 10.  BH&L did not respond to the motion for default judgment.

**I. The Trust Funds are entitled to a default judgment.**

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  After default is entered, a party may seek entry of default judgment under Rule 55(b).

The Trust Funds have satisfied the procedural requirements for default judgment.  The clerk has entered default against BH&L. ECF No. 12.  BH&L has not appeared in this case.  Thus, there is no procedural impediment to entering a default judgment.

Upon entry of default, I take as true the factual allegations in the non-defaulting party's complaint, except those related to the amount of damages. Fed. R. Civ. P. 8(b)(6); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).  Nonetheless, "entry of default does not entitle the non-defaulting party to a default judgment as a matter of right." *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1071 (C.D. Cal. 2004) (simplified).  The "general rule [is] that default judgments are ordinarily disfavored.  Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  Whether to grant a default judgment lies within my discretion. *Id.*

I consider the following factors in determining whether to grant a default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable

neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* at 1471-72.

The first *Eitel* factor considers whether the Trust Funds will suffer prejudice if a default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *Next Gaming, LLC v. Glob. Gaming Grp., Inc.*, No. 2:14-CV-00071-MMD-CWH, 2016 WL 3750651, at *3 (D. Nev. July 13, 2016). BH&L has failed to defend the lawsuit. If default judgment is not entered, the Trust Funds will be unable to pursue their claims against BH&L. This factor weighs in favor of entry of default judgment.

The second and third *Eitel* factors favor a default judgment when the plaintiff "state[s] a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also* Fed. R. Civ. P. 8. The Trust Funds' complaint sufficiently pleads that BH&L failed to respond to the Trust Funds' requests for an audit, so the Trust Funds are entitled to presume contributions in the amount of $100,000 for each year covered by the attempted audit. ECF No. 1 at 2. The Trust Funds have presented evidence regarding BH&L's status as a signatory employer, the funds' collection policies, their attempts to communicate with BH&L about the requested audit, and BH&L's lack of response. *See* ECF Nos. 13-1 at 2-3; 13-2 through 13-8; 13-11. Thus, the second and third *Eitel* factors weigh in favor of entry of default judgment.

In assessing the fourth *Eitel* factor, I consider "the amount of money requested in relation to the seriousness of the defendant's conduct, whether large sums of money are involved, and whether the recovery sought is proportional to the harm caused by [the] defendant's conduct." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1212 (W.D. Wash. 2014) (quotation omitted); *PepsiCo., Inc.*, 238 F. Supp. 2d at 1176. The Trust Funds request (1) $574,977 in delinquent contributions, (2) $448,178 in interest through April 18, 2025, (3) $448,178 in

liquidated damages, (4) $406 in audit fees, (5) $9,695 in past attorney's fees, and (6) $5,000 in future attorney's fees/collection costs, for a total of $1,486,434. This amount is justified under the fourth *Eitel* factor.

The Trust Funds also request that the post-judgment interest run at the contractual 18% rate, rather than the statutory rate in 28 U.S.C. § 1961. "An exception to § 1961 exists when the parties contractually agree to waive its application" through "an express, mutually-agreed upon interest rate in the case of default." *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004). The Trust Funds' collection policy states that "[i]nterest on the unpaid contributions shall be computed at eighteen percent (18%) simple interest, from the Due Date to the date of payment in full." ECF No. 13-6 at 3. Therefore, the 18% contractual rate is also justified under the fourth *Eitel* factor.

The fifth *Eitel* factor weighs the possibility of a dispute regarding material facts in the case. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Id.* (citation omitted). BH&L has not appeared or rebutted any of the Trust Funds' allegations. The Trust Funds have presented evidence that BH&L was a contributing employer who failed to respond to audit requests, thereby entitling the Trust Funds to various remedies under the relevant agreements and policies. Thus, the fifth *Eitel* factor weighs in favor of entry of default judgment.

The sixth *Eitel* factor considers whether the defendant's default is due to excusable neglect. *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. The clerk of court entered default on January 14, 2025, and BH&L still has not appeared. ECF No. 12. There is no evidence before me that the failure to respond is due to excusable neglect. *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (per curiam) (holding that it was "perfectly appropriate" for

5

the district court to enter default judgment against a corporation that failed to appear through counsel in the action). Given the time period during which BH&L had notice of this action yet failed to appear, it is unlikely that BH&L failed to respond due to excusable neglect. Thus, the sixth *Eitel* factor weighs in favor of entry of default judgment.

Finally, the seventh *Eitel* factor takes into account the policy favoring a decision on the merits. "Cases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But BH&L's failure to respond to the complaint "makes a decision on the merits impractical, if not impossible." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Thus, while this final *Eitel* factor always weighs against default judgment, it does not preclude me from entering a default judgment. A decision on the merits is desirable, but under these circumstances, default judgment is warranted.

I therefore grant the Trust Funds' motion for default judgment for (1) $574,977 in delinquent contributions, (2) pre-judgment interest at the contractual 18% simple interest rate through the date of judgment, (3) $448,178 in liquidated damages, (4) $406 in audit fees, (5) $9,695 in past attorney's fees, (6) $5,000 in future attorney's fees/collection costs, and (7) post-judgment interest shall accrue at the contractual 18% simple interest rate. The Trust Funds shall prepare and file a proposed form of final judgment by October 22, 2025 calculated as if the final judgment will be entered on October 24, 2025.

I THEREFORE ORDER that the plaintiffs' motion for default judgment **(ECF No. 13) is GRANTED**. The plaintiffs shall file a proposed form of final judgment by October 22, 2025 calculated as if the final judgment will be entered on October 24, 2025.

DATED this 17th day of October, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE